IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DR. HAROLD DAVIS,

        Plaintiff,

  vs.                                      CIVIL NO.   01-799 MV/LFG

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY and UNUM
LIFE INSURANCE COMPANY OF
AMERICA, aka UNUM Provident
Corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## STRIKING PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS

THIS MATTER is before the Court on Provident's Motion to Reopen Expert Witness Discovery, or in the Alternative, to Strike Plaintiff's Supplemental Expert Witness Reports [Doc. 147]. The Court considered the motion, response and reply and determines that oral argument is not necessary.

### Defendant's Motion

This discovery dispute concerns Plaintiff's recently produced supplemental expert reports submitted by Garth Allen and Barbara Paull. The new reports were provided to Defendants on January 22, 2003. These reports purport to offer expert opinions not previously disclosed in Plaintiff's December 27, 2001 expert disclosures.[1] Moreover, since these new opinions were not

---

[1] At the Court's request, Plaintiff's counsel provided the Court with the original expert reports, together with the "supplementary reports." All reports were reviewed *in camera*, and the Court concludes that the supplementation reports do, indeed, contain new opinions and are based on information and documents not previously disclosed.

disclosed in the original expert report, and as the discovery deadline has passed, no opportunity is available to depose Plaintiff's experts on these new opinions unless the Court now reopens discovery, as well as gives Defendants an opportunity to have their own experts come up with new opinions to counter those offered by Plaintiff's experts.

Plaintiff argues that his supplementary reports are authorized by the rules of procedure, as this is new information and he has now disclosed the new information to opposing counsel. Defendant, on the other hand, contends that the expert reports are untimely and do not properly constitute supplements as contemplated by the rule. Thus, Defendants request that the Court either reopen discovery or, alternatively, strike the out-of-time reports.

## Procedural Background

In accord with its obligations under the Federal Rules of Civil Procedure and the district's Civil Justice Expense and Delay Reduction Plan ("Plan"), the Court adopted a case management plan for this case. The original plan called for discovery to be closed by February 28, 2002. Plaintiff was required to disclose the identity of his proposed experts and to produce the mandatory Fed. R. Civ. P. 26(a)(2) expert reports by November 28, 2001. Defendants were to identify their experts and produce Rule 26 reports by December 28, 2001. The Court also established motion filing deadlines and a deadline for submission of the Pretrial Order. Subsequently, at the parties' request, the Court granted a 30-day extension of deadlines. Thus, the discovery deadline was moved to March 28, 2002; the deadline for Plaintiff to identify his experts and produce Rule 26 reports was extended to December 28, 2001; and the deadline for Defendants to identify their experts and produce their expert reports was moved to January 28, 2002. Various other case management deadlines not at issue in this motion were also extended [Doc. 46].

On March 14, 2002, again at the parties' request, some case management deadlines were altered. The Court extended the discovery deadline and various motion package filing deadlines, but declined to extend the expert report production deadlines [Doc. 61]. Thus, under the Court's case management plan, Plaintiff's experts were to be disclosed and Rule 26 reports produced no later than December 28, 2001. On December 27, 2001, Plaintiff timely mailed his expert disclosures to Defendants. On January, 28, 2002, Defendants timely mailed their expert reports to Plaintiff.

On January 22, 2003, over one year after the production of the initial expert reports and about nine months after the close of discovery, Plaintiff produced the two supplemental reports that are the subject of this dispute. Plaintiff contends that Defendant's discovery tactics required him to obtain new and additional information from other sources that support the supplemental opinions.

At this juncture, all case management deadlines have expired. Discovery is closed; the deadline for filing discovery motions elapsed; the deadline for filing dispositive motions and the deadline for submitting the parties' Pretrial Order has passed. A settlement conference was conducted, but it was unsuccessful. The trial has twice been set--on December 9, 2002, then on February 10, 2003. The last setting was vacated and the trial has not yet been rescheduled. Thus, at present, all pretrial matters have been or at least should have been concluded with only the trial remaining.

## Analysis

**I.     The Civil Justice Reform Act of 1990**

The Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* ("CJRA"), was enacted to expedite the ultimate disposition of litigation and to lessen the financial burdens caused by delay. The CJRA's legislative history states in relevant part:

> The purpose of this legislation is to promote for all citizens--rich or poor, individuals or corporation, plaintiff or defendant--the just, speedy, and inexpensive resolution of civil disputes in our nation's federal courts.

Pub. L. 101-650, 1990 U.S. Code Congressional and Administrative News, p. 6804.

The changes brought about by adoption of the CJRA were historic and sweeping. Due to significant delays in the management and disposition of civil litigation in the federal courts, and especially due to skyrocketing litigation costs often caused by abuses in the discovery process, the CJRA shifted case management responsibilities to courts as a critical step in eliminating delay. *See* Foxley Cattle Co. v. Grain Dealers Mut. Ins. Co., 142 F.R.D. 677, 681-82 (S.D. Iowa 1992).

Under the CJRA, courts were to implement innovative strategies for reducing the costs and delays of civil litigation. *See* 28 U.S.C. § 471 (1994). The CJRA states:

> There shall be implemented by each United States District Court . . . a civil justice expense and delay reduction plan . . . . The purposes of each plan are to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy and inexpensive resolution of civil disputes.

A key component of the CJRA as well as of this district's own Civil Justice Expense and Delay Reduction Plan ("Plan"), is judicial management of cases. Courts now have a congressionally mandated obligation to ensure that cases move efficiently, expeditiously and economically through the litigation process.

Studies of federal court process confirm that case management and adherence to case management deadlines is key to achieving the CJRA's goals. Studies on court delay conducted by the Federal Judicial Center reveal:

> The primary finding was that greater and earlier judicial control over civil cases yields faster rates of disposition. The courts with the least

4

> amounts of delay characteristically kept stricter control of the case by precise scheduling of the cut-off date and other deadlines. The study concluded that "'a court can handle its case load rapidly only if it takes the initiative to require lawyers to complete their work in a timely fashion.'"

Federal Judicial Center, Case Management and Court Management in the United States Courts, (1977) at 17.

The Court recognizes that "the Civil Justice Reform Act . . . places substantial burdens on everyone involved in litigation in district courts." United States v. Diamond Industries, Inc., 145 F.R.D. 48 (D. Del. 1992). In the Diamond Industries case, the court commented on its obligations to enforce time deadlines.

> The CJRA requires district courts to manage litigation with a view toward reducing delay and cost in bringing cases to trial. In this regard, the CJRA sets time limits that are to be met by the trial court for all pre-trial proceedings and ultimately trial. 28 U.S.C. § 473(a)(2)(B). The only permitted exception to these time limits countenanced by the CJRA is for a "complex case." 28 U.S.C. § 473(a)(2)(B)(I) and (ii).

Id. at 145 F.R.D. 48.

**II.     Rule 26(a)(2) – Disclosure of Expert Reports**

Following adoption of the CJRA, the Federal Rules of Civil Procedure were amended in 1993 to implement the CJRA's goals. One key amendment dealt with the disclosure of expert reports. Rule 26(a)(2) provides that expert reports "shall contain" the following six items:

1. a complete statement of all opinions to be expressed and the basis and reasons therefor;

2. the data or other information considered by the witness in forming the opinion;

3. any exhibits to be used as a summary of or support for the opinion;

    4. the qualifications of the witness, including a list of all publications offered by the witness within the preceding ten years;

    5. the compensation to be paid for the study and testimony; and

    6. a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

These disclosure obligations are mandatory and are intended to further the purposes of the CJRA. Expert reports are meant to fully alert opposing parties of the opinions that will be offered and the basis for each opinion to be expressed at trial. The Advisory Committee Commentary to Rule 26 states:

> (2)(B) requires that persons retained or specially employed to provide expert testimony, . . . must prepare a detailed and complete written report stating the testimony the witness is expected to present during direct examination, together with the reasons therefor.

This rule was intended to simplify the discovery, case evaluation and litigation process. In Aircraft Gear Corp. v. Kamen Aerospace Corp., 1995 WL 571431 at *1 (D. Ill. Sept. 25, 1995)(93C1220), the court stated:

> Anyone who has familiarity with the 1993 rule amendment [relating to expert reports] including familiarity with the notes of the Advisory Committee on Rules, is well aware that its requirements were geared to provide the opposing party with "a reasonable opportunity to prepare for effective cross-examination" (Committee Notes), and in accordance with the Rule's fundamental principle of eliminating any vestiges of the "sporting" or "fox-hunt" theory of litigation, to provide the opposing party with a comparable opportunity to prepare for examination of the experts via depositions in advance of trial.

The Advisory Committee Commentary to Rule 26 further states that, "Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that the party will not ordinarily be permitted to use

in direct examination any expert testimony not so disclosed." Id. This is the alternative relief sought by Defendant in the present action.

### III.     Application of Rule 26 and the CJRA to this Discovery Dispute

Plaintiff's experts, Garth Allen and by Barbara Paull, each submitted a supplementary report, that expresses new opinions not previously disclosed. For example, Mr. Allen's original report dealt primarily with the Plaintiff's claims file, while his supplementary report and the opinions he expresses therein focus on Defendant's financial data, statistical reports, and Defendant's business operations. In addition, Mr. Allen expressed opinions in his original report that Defendant engaged in wrongful conduct with respect to the investigation of the Plaintiff's claim and its decision to terminate benefits. He supplied opinions concerning contract interpretation, poor communications and Defendant's refusal to settle. His supplementary report, on the other hand, discusses other claimed practices and offers opinions concerning other alleged errors or irregularities that were not previously expressed, i.e., violations of Defendant's guidelines, wrongful termination and placing its own interests ahead of that of an insured.

So, too, Ms. Paull's first expert report was specific as to Dr. Davis and his claims, while the supplementary report deals with Defendant's allegedly bad business practices. The supplementary report raises new issues and new allegations of misconduct.

Clearly, Plaintiff's experts intend to testify, offer opinions and to present a substantial amount of material that was not included in their initial reports. They now propose to express opinions not previously disclosed and will rely on documents not included in their original report. Indeed, after the close of all case management deadlines and, significantly, after the close of discovery, Plaintiff

seeks to slip in new opinions, expand on old ones and rely on new bases for the opinions under the claim that they are proper "supplements."

Such an approach is improper under the mandates of Rule 26, and contrary to the purposes of the CJRA. Moreover, the most recent expert reports submitted do not constitute "supplements" under Rule 26(e), which allows supplementation if the original report was incorrect or incomplete, i.e., for errors in numeric calculations that were discovered subsequent to the original report. There are no provisions in the rule for "preliminary reports" followed by "supplementary reports" as contemplated by Plaintiff. Rather, Rule 26 requires production of a "detailed and complete report" with full disclosure of all the opinions that will be offered at the time of trial, together with full disclosure of the basis for the opinions to be offered.

To allow supplementation of reports with new opinions thwarts opposing counsel's ability to evaluate the strength and weakness of a case within the times contemplated by case management deadlines; it interferes with defense counsel's ability to properly depose the expert with report in hand; and it interferes with defense counsel's ability to prepare to meet proofs at trial. Now that Plaintiff has received defense expert reports, he either wishes to shore up the initial opinions or to expand the opinions previously offered. This is impermissible. The practice would mean that there would be no finality to any opinion. Each side, in order to buttress its case or to expand it theory could "supplement" existing reports with new or expanded opinions. Such a practice would circumvent case management deadlines and would hinder rather than facilitate the ultimate disposition of litigation. Further, it would increase the costs of litigation and contribute to litigation delays.

A number of decisions issued in this District and Circuit confirm that Plaintiff's proposed supplemental expert reports should not be permitted. In <u>RTC v. Gregory</u>, Tenth Circuit Judge Paul

J. Kelly, sitting as a designated judge, rejected the plaintiff's arguments that plaintiff could file "supplements" intended to "deepen" and "strengthen" its prior expert report. Judge Kelly wrote:

> Fed. R. Civ. P. 26(a)(2)(B) requires that an expert report "contain a complete statement of all opinions to be expressed and the basis and reasons therefor to facilitate discovery." Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" disclosure upon information later acquired, that provisions does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness report (indeed, the lawsuit from the outset).

No. CIV 94-52 slip op. (D.N.M. Dec. 13, 1995).

Judge Kelly found that plaintiff RTC sought to use a "supplemental report" to expand and add to opinions contained in its initial report. Judge Kelly appropriately struck the supplemental report and precluded RTC's experts from testifying to matters contained in the supplement. At trial, the expert testimony was limited to matters disclosed in the original expert report. Id. *See also* GEM Realty Trust v. First Bank of Boston, 1995 WL 127825 at *5 (D.N.H. March 20, 2995) (declined to allow expert to testify where party failed to comply with full expert disclosure requirements in the time provided by the court).

Judge Bruce Black recently took the same stand in a case where a party sought to supplement his expert report with new information and opinions. The opposing party objected to the new report and Judge Black commented on his "benchmark rule:"

> I will allow the expert to testify to anything that's in their report that was disclosed timely, or anything on which they were deposed. Anything disclosed after that is in violation of the rule, and I won't allow it . . . .

Questar Southern Trails Pipeline Co. v. .69 Acres of Land, CIV. 02-10 (Transcript, p. 41).

To rule otherwise would frustrate the purpose of the expert disclosure requirement. In Nguyen v. IBP, Inc., 162 F.R.D. 675, 681 (D. Kan. 1995), the court held that "[t]he requirements of 26(a) are mandatory as to any expert retained to testify. If the expert is unable or unwilling to make the disclosures, he should be excluded as a possibility for retention as an expert witness in the case."

In support of Plaintiff's position, counsel also argues that Defendant failed to produce certain information, and, therefore, that he was forced to obtain new information "from other cases." (Response, p. 3). Notwithstanding the fact that the Court granted Plaintiff an extension of time to complete the original report, a timely filed expert report in full compliance with the requirements of Rule 26(a) did not occur. It is now too late.

In addition, the fact that Plaintiff's expert may now be available to have his deposition taken[2] is of no consequence. In Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277 (8th Cir.), *cert. denied*, 516 U.S. 822 (1995), plaintiff argued that her non-compliance with time limits and disclosure requirements should be excused as the expert's deposition was taken before trial and defendant learned the basis for the opinion to be offered. The court rejected the argument saying, "The failure to comply with the scheduling order is not excused because [defendant] elected to depose Kelsey [the expert]. Id. at 284.

The Court also rejects Plaintiff's argument that there is no harm to Defendant since Defendant was aware of all of the proposed new information that was drawn from verdicts and judgments entered against Defendant in other cases. The only way to prevent Defendant from being

---

[2]It is noteworthy, however, that Plaintiff opposes further depositions of his experts on the ground that they are not necessary.

prejudiced would be to reopen discovery. As previously noted, discovery closed long ago and reopening discovery necessitates expenditure of time and money, and would certainly contribute to the delay in the ultimate disposition of this litigation. Thus, allowing new discovery and new deadlines for new reports by defense experts would be contrary to the goals of the CJRA.

This situation is different from those cases where an expert has given his or her report, but, at the time of a deposition, offers new theories or opinions which were subject to exploration by opposing counsel during the deposition. Here, since the new opinions were not previously presented or explored during the discovery process, only new depositions would avoid prejudice.

In sum, the Court determines that Defendant's request for alternative relief is well-taken. The Court strikes the supplemental reports as being filed out of time and without consent or concurrence of opposing counsel or the Court. The parties may not unilaterally alter case management deadlines without Court approval. D.N.M.LR-Civ. 16.1.

In accord with Judge Kelly's analysis and ruling in <u>RTC v. Gregory</u>, Plaintiff's experts may not supplement his report and may not add new information, new explanations or offer new opinions. The experts' trial testimony should be confined to the opinions contained in the Plaintiff's initial expert disclosures, and the experts may not offer opinion testimony not disclosed in the December 2001 reports.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge