## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DR. HAROLD DAVIS,

        Plaintiff,

vs.                                                                                    Civ. No. 01-799 MV/LFG

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, UNUM LIFE
INSURANCE COMPANY OF AMERICA
(a/k/a UNUM PROVIDENT
CORPORATION), and JOHN DOES 1-10,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff's Motion in Limine Regarding

Mental and/or Emotional Evidence, filed July 23, 2002, **[Doc. No. 103]**.  A hearing was held on

the motion on May 4, 2004.  The Court, having considered the motions, briefs, argument, relevant

law and being otherwise fully informed, finds that the motion is well-taken and will be

**GRANTED in part**.

### FACTUAL BACKGROUND

This case arises from the alleged wrongful termination of Plaintiff's total disability benefits

under two disability policies sold to Plaintiff by Defendants Provident Life and Accident Insurance

Company  and UNUM Life Insurance Company of America (a/k/a UNUM Provident

Corporation)(collectively "Provident").  These policies provide monthly benefits in the event

Plaintiff becomes totally disabled prior to a certain age.  Under the policies, total disability or totally disabled means "that due to Injuries or Sickness . . . you are not able to perform the substantial and material duties of your occupation."

Plaintiff is an epidemiologist/pediatrician whose primary job duties consist of intellectually-demanding, but physically-sedentary, activities such as designing, conducting, and reporting epidemiological studies.  Most days, Plaintiff's job requires him to sit at a computer for 6-7 hours.

In April 1999, Plaintiff submitted a claim for benefits under his disability policies, claiming to be totally disabled as of December 3, 1998, due to widespread pain from Myofascial Pain Syndrome ("MPS") and/or Fibromyalgia ("FM") which prohibited him from standing or sitting in a static position for even short periods of time without significant pain and adversely affected his ability to concentrate sufficiently to perform the scientific and medical research and analysis required by his job.  Provident began paying Plaintiff total disability benefits under a reservation of rights and initiated an investigation into Plaintiff's claim.

As part of its investigation of Plaintiff's claim, Provident hired investigators to observe and report on Plaintiff's daily activities for several days in June, July and August of 1999 and February of 2000.  Based, in part, on the surveillance reports and videos, Provident terminated Plaintiff's total disability benefits because his "spontaneous daily activities [we]re not consistent with [his] claimed and reported restrictions and limitations, leading [Provident] to conclude that [Plaintiff was] capable of performing the duties of [his] occupation."  Plaintiff appealed the termination of his benefits.  On January 3, 2001, Provident upheld its decision to terminate Plaintiff's benefits.

Plaintiff filed a complaint against Provident and John Does 1-10, alleging breach of contract, insurance bad faith, violation of the New Mexico Insurance Practices Act, violation of the Unfair Trade Practices Act, joint venture for illegal purposes, civil conspiracy, aiding and abetting, and *prima facie* tort.[1]  In his Complaint, Plaintiff does not claim to have any mental disabilities and does not request emotional or mental distress damages.

Plaintiff filed the instant motion seeking to prohibit Provident from referring to any mental or emotional issues at trial.  Plaintiff contends that Provident did not raise any mental or emotional issues as a basis for its denial of benefits, that Plaintiff has not raised any issues of mental or emotional health in this case, and that the introduction of such evidence is immaterial, irrelevant and extraneous and would be unduly confusing and prejudicial.  Provident counters that psychological evidence is relevant to Plaintiff's credibility, is a necessary component of an MPS claim, and was raised as a basis of its denial of Plaintiff's claim.

## DISCUSSION

Rule 403 of the Federal Rules of Civil Procedure provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."  Fed. R. Civ. P. 403.  "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Civ. P. 401.  Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair

---

[1]  Plaintiff subsequently abandoned his joint venture for illegal purposes, civil conspiracy, aiding and abetting, and *prima facie* tort claims.  *See* Plaintiff's Response to Court Order, dated February 12, 2004.

prejudice, confusion of the issues, or misleading the jury."  Fed. R. Civ. P. 403.

Medical experts agree that there is an interrelationship between the physical symptoms of MPS and FM and a patient's mental health.  Indeed, several of Plaintiff's health care providers noted the interface between Plaintiff's physical pain and his emotional or psychological issues. Despite evidence that Plaintiff's disease has a physical and a mental component, and, assumably, both these factors contribute to Plaintiff's disability, Plaintiff is relying solely on the physical aspects of his disease to demonstrate that he is totally disabled.  Plaintiff therefore seeks to exclude any evidence of mental or emotional issues on the grounds that he is only seeking to prove that he has a physical condition that qualifies as a total disability and is not relying on any alleged mental disability.[2]

The majority of evidence regarding Plaintiff's mental and emotional condition appears to have been obtained by Provident during discovery in this case.  Many courts have held that the reasonableness of an insurer's conduct must be determined based solely on the information known to the insurer at the time it made the challenged decision.  *See, e.g., Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010-11 (R.I. 2002) (information acquired by an insurer subsequent to the denial of the claim is neither relevant nor admissible evidence in a bad faith action); *EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F.Supp.2d 1072, 1076 (D. Mont. 1999) (insurers limited to presenting only those facts known to them at the time they made their decision to deny coverage); *Aceves v. Allstate Ins. Co.*, 827 F.Supp. 1473, 1487 (S.D.Cal. 1993)

---

[2]  The provisions of the disability policies issued to Plaintiff do not appear to distinguish between a total disability as a result of a purely physical disease and a total disability as a result of a sickness that has both a physical and mental component.  Consequently, even if Provident could prove that Plaintiff's pain is attributable in part to emotional or mental issues, it would not be a defense to coverage under the policy.

(the reasonableness of an insurer's conduct must be determined on the basis of the information known to it at the time of the denial); *Radecki v. Mutual of Omaha Ins. Co*., 583 N.W.2d 320, 326 (Neb. 1998) (the "arguable basis" to deny a claim must be based on information available to the insurer at the time the demand is presented); *Insurance Co. of N. America v. Citizensbank of Thomasville*, 491 So.2d 880, 883 (Ala. 1986) ("information received by the insurer after the date of the denial is irrelevant to the determination of whether the insurer denied at that date in bad faith"). While the New Mexico Supreme Court has not directly addressed this issue, it has held that an insurer is limited to a theory of the case based on the information that it used in denying the claim. *See Cabrera v. National Found. Life Ins. Co.,* No. 21,875, slip op. at 5 (N.M. S.Ct. Sept. 15, 1994) (unpublished) (holding that trial court properly limited an insurer "to a theory of the case based on the information that it had used in denying the claim"). It is only logical to conclude that New Mexico law would apply a similar limitation on an insurer's defense of its denial of a claim. The Court therefore predicts that under New Mexico law, the reasonableness of an insurer's decision to deny a claim must be determined based on the information before the insurer when the decision was made. Accordingly, Plaintiff's motion *in limine* shall be granted to the extent that it requests that Provident be limited to presenting only those facts known to it at the time it made the decision to deny coverage.

In *Cabrera*, the New Mexico Supreme Court also stated that an insurer may not assert at trial a justification for denying a claim that was not asserted at the time the claim was denied. *Cabreras,* slip op. at 5; *see also Skaling*, 799 A.2d at 1011 ("insurer is limited to introducing evidence that it actually relied upon and communicated to the insured when it denied the claim and may not seek to enhance its defense by pointing to extraneous facts or arguments that it did not

communicate to the insured when it refused payment").  Consequently, Provident may not assert at

trial a justification for denying Plaintiff's disability claim that was not asserted at the time Provident

denied Plaintiff's claim.

Provident contends that Plaintiff's psychological issues were a basis for its denial of

Plaintiff's benefits and that Provident raised these issues in its denial letters to Plaintiff.  In its

May 12, 2000 denial letter, Provident stated that:

> During the course of claim handling, efforts have been made to validate
> informational materials presented by you regarding your current activities and
> abilities.  Resultant information provided to these offices is that your spontaneous
> daily activities are not consistent with your claimed and reported restrictions and
> limitations, leading us to conclude that you are capable of performing the duties of
> your occupation.

The following excerpts from Provident's review of Plaintiff's medical file were included as

support for this conclusion:

> ". . . activity is not consistent with either his reported activity levels or his listed
> R&L's.  (restrictions and limitations)  Insured is also observed at other times in
> activities inconsistent with his reported R&L's."

> ". . .Dr. Davis' complaints are subjective and his reports of his activities are
> contradictive with each other . . ."  ". . .Also, what he says he can and can't do, in
> addition to being inconsistent are structurally and functionally incongruent.  He says
> he has trouble sitting and must extend his legs to relieve pain and at another point he
> says his pain is better if he squats or sits on his heels.  He says he was in bed from
> 12/98 to 5/99, but during that time he describes a conditioning program in 3/99."

> ". . . Dr. Davis is self limiting [sic] and telling his medical providers what he can and
> can't do.  They in turn are accepting this at face value and some are actively
> supporting disability.  His job is apparently mostly done sitting, and that is what he
> says he can't do.  There is insufficient evidence to support a physical medical
> disorder that would explain his complaints and claimed impairment."

> " . . .these observed activities are compatible with the physical capacity to do a
> sedentary to light, or more, physical job demand."

The May 12, 2000 denial letter did not reference any psychological factors as a basis for the denial of benefits.  Provident cited solely to the lack of evidence of a physical medical disorder and to the fact that Plaintiff's spontaneous daily activities were not consistent with his claimed and reported restrictions and limitations.

On January 3, 2001, Provident issued a letter upholding its denial of Plaintiff's benefits.  In this letter, Provident cited more extensively to the reports prepared by its medical department prior to the May 12, 2000 denial letter, including the following statement:

> [Plaintiff] had been said to be depressed and suicidal and was seeing a psychiatrist, Dr. Levin, and was on 225 mg of Effexor in 2/99.  He also began oxycontin at that time, which was increased to a rather high dose and now has been reduced.  He is said to have been on Prozac in the past.  Dr. Gerwin's records mention self induced bruising from excessive self massage of trigger points, during early 1999.  So, the picture is one of inconsistencies and considerable psychosocial overlay and malingering is a possibility as well, given the gross inconsistencies in the file.

Provident  also provided the following response from its medical department to the question of whether the additional information provided by Plaintiff altered the opinion set forth in the previous medical review:

> No.  This does not change my original conclusions as to the severity of his medical condition and impairment for his sedentary job.  He has submitted testimonials from two physicians and from himself, which are very similar in their content and conclusions.  Their main point appears to be that Dr. Davis has had a spectrum of symptoms and claimed limitations and has had a lot of medical treatment and says he wants to RTW [Return to Work], so therefore he must be disabled.   This is all self reported by Dr. Davis, but it appears that because the APs [Attending Physicians] say they find some bands and tender points on exam, they conclude this supports disability.  They feel that we should reach the same conclusion.  However, we all know many people with tender points, trigger points, myofascial bands and muscle spasm that are working every day and managing to live with it.  In fact Dr. Davis appears to be managing very well and is able to drive two or more hours a day and ski for hours and swim laps in a pool at a level that can only be done by conditioned individuals.  This implies that he engages in regular aerobic exercise and has for some time.

Provident concluded its appellate letter with the statement that "because there is no objective information to support that you are unable to perform the duties of your occupation, we are upholding the decision as outlined in our initial correspondence of May 12, 2000."

While the January 3, 2001 appellate letter notes that Plaintiff has been treated for depression and that there may be some "psychosocial overlay," the Court finds that a fair reading of the document as a whole reveals that the basis for the denial was a lack of objective evidence of a physical disorder that would prevent Plaintiff from performing the duties of his occupation.  The Court's finding is supported by the questions submitted by Provident to its medical department when evaluating Plaintiff's claim, which focused solely on evaluating the existence of a physical medical disorder:

> 1.      Are restrictions and limitations consistent with observed activities? Consistent with reported ability levels?
>
> 2.      Are restrictions and limitations imposed upon Dr. Davis by a physical condition which would preclude the performance of his occupational duties?

In addition, Provident did not consult its unit that evaluates disability claims having a psychiatric, mental health, or emotional health component and did not request that Plaintiff undergo any psychiatric examination prior to denying Plaintiff's claim.

Considering all the above factors, the Court concludes that Provident denied Plaintiff's claim on the grounds that there was insufficient medical evidence to support a physical medical disorder that explained Plaintiff's claimed impairment.  While Provident noted that there may be some "psychosocial overlay" and speculated that Plaintiff may be malingering, Provident did not rely upon any psychological issues as a basis for its denial of benefits and, therefore, may not now raise these issues to justify its denial.  Consequently, Plaintiff's motion *in limine* shall be granted to the

extent it seeks to prohibit Provident from asserting any psychological issues as a basis for denying Plaintiff's disability claim.

Provident denied Plaintiff's disability claim on the grounds that there was no objective evidence of a physical medical disorder that would prevent Plaintiff from performing his job duties. Provident did not rely upon any alleged mental or emotional issues as a basis for its denial of benefits. New Mexico law precludes Provident from asserting a justification for denying a claim that was not asserted at the time the claim was denied. In addition, New Mexico law, as predicted by the Court, would determine the reasonableness of an insurer's conduct based solely on the information known to the insurer at the time it made its decision to deny coverage. Consequently, information acquired by Provident subsequent to the denial of Plaintiff's claim, including evidence of Plaintiff's mental and emotional condition, is neither relevant nor admissible. To the extent evidence of Plaintiff's mental or emotional issues that Provident had in its possession at the time it denied Plaintiff's benefits is potentially relevant to issues other than Provident's justification for denying Plaintiff's benefits, including Plaintiff's credibility and truthfulness, the Court will rule on the admissibility of such evidence at trial when the factual and legal context of the testimony is developed.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion in Limine Regarding Mental and/or Emotional Evidence, filed July 23, 2002, **[Doc. No. 103]** is hereby **GRANTED in part.** Provident may not offer any evidence of Plaintiff's mental or emotional condition that Provident obtained subsequent to the denial of Plaintiff's claim and Provident may not offer any evidence of Plaintiff's psychological or emotional issues to justify its denial of Plaintiff's disability benefits.

Dated this 7th of June, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

<u>Attorneys for Plaintiff</u>:
    Steve Vogel, Esq.
    Esteban A. Aguilar, Esq.

<u>Attorneys for Defendant</u>:
    Thomas L. Johnson, Esq.
    Kerri L. Peck, Esq.